# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY JOHNSON,<br><br>  Plaintiff,<br><br>  v.<br><br>C/O SHAW, et al.,<br><br>  Defendants. | Case No.  1:13-cv-00042 LJO DLB (PC)<br><br>FINDINGS AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO DISMISS PURSUANT TO F.R.C.P. RULE 12(B)(6)<br><br>[ECF No. 23] |

Plaintiff Timothy Johnson ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action. Plaintiff filed this action on January 3, 2013.  On October 9, 2013, the Court screened the complaint and found it failed to state a cognizable claim. Plaintiff was granted an opportunity to file an amended complaint. On October 23, 2013, Plaintiff filed a First Amended Complaint ("FAC").  On October 20, 2014, the Court screened the FAC and found it stated a cognizable claim against Defendant Remotigoe for violation of the First Amendment.  The Court granted Plaintiff the opportunity to file an amended complaint or notify the Court of his willingness to proceed on the cognizable claim.  On November 17, 2014, Plaintiff notified the Court of his willingness to proceed on the remaining cognizable claim.  On December 2, 2014, the Court dismissed all other claims and Defendants and directed Plaintiff to complete and return service documents.  On December 31, 2014, the U.S. Marshal Service was ordered to serve the complaint on Defendant Remotigoe.  On March 9, 2015, Defendant

1

Remotigoe filed a motion to dismiss the FAC under Fed. R. Civ. P. 12(b)(6) on the ground that Plaintiff failed to state a claim for relief. Plaintiff did not file an opposition. The motion is deemed submitted pursuant to Local Rule 230(l).

**I.     Summary of First Amended Complaint[1]**

Plaintiff is currently incarcerated at the California State Prison in Corcoran, California, where the events giving rise to this action occurred.

Plaintiff alleges the following. Plaintiff states he is a high risk patient who suffers from hypokinesia with a left ventricular hypertrophy. He states his heart only operates at a 40% capacity which requires him to take nitroglycerin pills. He further states he is in the Mental Health Service Delivery System.

On August 27, 2013, Plaintiff was called from his housing unit to the medical clinic for his weekly blood pressure check. As Plaintiff approached the clinic, he stopped Correctional Officer Lopez outside of the clinic and asked him who was working in the clinic that morning. After Plaintiff was informed who was working in the clinic, he notified Lopez that he wished to refuse any medical attention from any staff member who he had filed a complaint against or who he is currently in litigation against. As he was having this conversation with Lopez, Defendant Remotigoe approached. Lopez advised Remotigoe that Plaintiff was refusing treatment. Remotigoe then told Plaintiff, "Johnson, ain't nothing wrong with you. Nurse Tally told me what happened already, so stop being so dramatic and come in the clinic." Plaintiff responded that he "would rather die than to be treated and abused by these medical staff and personnel." Defendant Remotigoe responded, "You have no rights that say you can refuse or pick who you want to be treated by." Plaintiff then asked to speak to a medical supervisor, but his request was denied. Plaintiff then told Remotigoe that he was obstructing his medical care, to which Remotigoe stated, "I ain't got time for this shit! Is you coming in or not?" Plaintiff again asked for a medical supervisor but was denied. Plaintiff then advised Remotigoe that he would be filing a complaint against him, at which time Remotigoe stated, "Read my lips. You are not the only who knows

---

[1] The Court summarizes only the portion of the FAC relevant to Plaintiff's claim of retaliation.

2

how to file paperwork; I'm not Nurse Tally." Plaintiff states that Remotigoe filed a false rules violation report two days later in retaliation.

## II.     Fed. R. Civ. P. 12(B)(6)

### A.     Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)) (quotation marks omitted); Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011); Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Huynh v. Chase Manhattan Bank, 465 F.3d 992, 996-97 (9th Cir. 2006); Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000). Further, although the pleading standard is now higher, the Ninth Circuit has continued to emphasize that prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

### B.     Analysis

#### 1.     First Amendment

##### a.     Legal Standard

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

1 exercise of his First Amendment rights, and (5) the action did not reasonably advance a
2 legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord
3 Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Silva, 658 at 1104; Brodheim v. Cry,
4 584 F.3d 1262, 1269 (9th Cir. 2009).

        b.        Discussion

Defendant Remotigoe alleges that Plaintiff fails to state a cognizable retaliation claim because Plaintiff's act of threatening to file a grievance was not protected conduct, Defendant's conduct would not chill an ordinary person from engaging in First Amendment activity, and Defendant's motive for issuing the RVR was not retaliatory in nature but legitimate.

Defendant is correct that according to the complaint, Plaintiff's conduct outside the medical clinic was obstructive. Plaintiff refused to accept treatment, which he is entitled to do. However, Plaintiff became increasingly argumentative with correctional officers and eventually threatened Defendant with a lawsuit. Defendant persuasively argues that threatening Defendant when Defendant was attempting to carry out his duties as a correctional officer is not protected speech. See, e.g., Jones v. Book, 404 Fed.Appx. 169, 170 (9th Cir. 2010) (unpublished decision). Plaintiff filed his grievance after Defendant issued the RVR; therefore, Plaintiff cannot show that the RVR was issued because of Plaintiff's protected conduct.

Defendant also persuasively argues that his actions could not chill a person from protected conduct. Defendant's version of events in the RVR agrees with Plaintiff's version as stated in the complaint. The RVR was therefore accurate according to both parties. While the issuance of a false RVR in retaliation for protected conduct could chill a person from engaging in protected conduct, Plaintiff fails to show how an accurate RVR would do so. Thus, Defendant is correct that Plaintiff fails to establish this element of his claim.

Finally, Defendant argues that Plaintiff's version of events establishes that Defendant's actions were motivated not out of retaliation but out of legitimate penological interests of safety and security. According to the complaint, Plaintiff was disruptive outside the medical clinic. Plaintiff engaged in argument with Lopez and then with Defendant. Plaintiff refused to go into the medical clinic, and when Defendant again asked him to do so, Plaintiff threatened him with a

lawsuit. Correctional officers are expected to document inmate misbehavior. See Cal. Code Regs. tit. 15, § 3312. Based on Plaintiff's version of the events, Plaintiff fails to show that Defendant's actions were motivated by retaliation; rather, the obvious explanation is that Defendant issued the RVR because of Plaintiff's disruptive behavior. Indeed, Plaintiff's version agrees with Defendant's statement of facts in the RVR. Therefore, Plaintiff fails to establish this prong of his retaliation claim as well.

### 2. Qualified Immunity

Defendant further claims he is entitled to qualified immunity because he did not violate Plaintiff's rights and his conduct was objectively reasonable.

Qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mueller v. Auer, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted). Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Mallei v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).

In resolving the claim of qualified immunity, the Court must determine whether, taken in the light most favorable to Plaintiff, Defendants' conduct violated a constitutional right, and if so, whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001); Mueller, 576 F.3d at 993. While often beneficial to address in that order, the Court has discretion to address the two-step inquiry in the order it deems most suitable under the circumstances. Pearson, 555 U.S. at 236 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94.

1       Plaintiff fails to demonstrate that Defendant violated Plaintiff's constitutional rights.  As
2 previously discussed, threatening an officer is not protected conduct.  Thus, Defendant is entitled
3 to qualified immunity.
4       Even if the Court were to consider Defendant's actions as violating Plaintiff's First
5 Amendment rights, a reasonable officer in Defendant's position could have believed that his
6 conduct was lawful.  Plaintiff was increasingly disruptive outside the clinic to the point where he
7 threatened Defendant.  Defendant could reasonably believe that Plaintiff's conduct might lead to
8 violence, and therefore he did not act unreasonably in issuing the RVR.  Accordingly, Defendant
9 is entitled to qualified immunity.

10 **IV.    Conclusion and Recommendation**

11       Based on the foregoing, it is HEREBY RECOMMENDED that:

12       1.    Defendant Remotigoe's motion to dismiss under Fed. R. Civ. P. 12(b)(6) on the
13 grounds that the FAC fails to state a claim be GRANTED; and

14       2.    Since the deficiencies at issue are not curable through amendment, <u>Akhtar v.</u>
15 <u>Mesa</u>, 698 F.3d 1202, 1212-13 (9th Cir. 2012), the FAC be DISMISSED WITH PREJUDICE
16 and without leave to amend, thereby terminating the case.

17       These Findings and Recommendations will be submitted to the United States District
18 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty
19 one (21) days after being served with these Findings and Recommendations, the parties may file
20 written objections with the Court.  The document should be captioned "Objections to Magistrate
21 Judge's Findings and Recommendations."  A party may respond to another party's objections by
22 filing a response within fourteen (14) days after being served with a copy of that party's
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **April 22, 2015**              /s/ *Dennis L. Beck*
                                                          UNITED STATES MAGISTRATE JUDGE